OPINION
Saylor Ray White, Jr. was found guilty of forgery and theft of property valued at over $500. The trial court sentenced him accordingly, and White appeals.
White was indicted on March 30, 1998 on one count of forgery, in violation of R.C. 2913.31(A)(1), and one count of theft, in violation of R.C. 2913.02(A)(3). On June 2, 1998, White pleaded not guilty to the charges. On June 25, 1998, White filed a motion to suppress the identification testimony of a witness who had identified his photograph from an array, which allegedly had been "unnecessarily suggestive and conducive to irreparable mistaken identification." Following the July 7, 1998 suppression hearing, the trial court overruled White's motion.
White proceeded to trial before a jury on October 28, 1998. The evidence presented at trial was as follows.
Bradley Mercer testified that, while applying to become a police officer for the City of Dayton in early 1997, he had been surprised to learn of the cancellation of his driver's license and the issuance of a new state identification card in his name. Mercer had neither canceled his license nor requested a state identification card, and he had believed that his license had been in his possession at all times in December 1996 and January 1997. Mercer immediately contacted the Ohio Bureau of Motor Vehicles and received a copy of the photograph appearing on the state identification card. Mercer did not recognize the individual whose photograph appeared on the card or the signature below the photograph. The identification card contained Mercer's actual social security number and the imposter's physical traits of height, weight, hair color, and eyes. Mercer gave the photograph to Detective Gregory Laravie of the Montgomery County Sheriff's Department.
In April 1997, a representative from Loan Zone, a subsidiary of National City Bank that was located in Huber Heights, Ohio, contacted Mercer inquiring about a delinquent loan payment. Mercer testified that he had been surprised by the telephone call because he had never applied for or obtained a $2,500 loan from Loan Zone. Mercer testified that he had not completed or signed the loan application forms and had not given anyone permission to do so in his name. The state introduced the application forms containing a forgery of Mercer's signature. Mercer also testified that he had never met White.
Detective Laravie testified that he had contacted Tami Good at Loan Zone in April 1997 and had obtained copies of the loan application forms signed by Mercer's imposter. Detective Laravie telephoned the imposter's home phone number, which was registered to Donnie Carmichael, who did not know Mercer. The work telephone number listed on the application was registered to "Saylor R. White, Jr. at 2424 Baywood Street in Dayton." On his fifth or sixth stop at that address, Detective Laravie left his business card. By running a check on the license plates of a vehicle parked in the driveway, Detective Laravie learned that White owned the vehicle. Detective Laravie also obtained a photograph of White. On June 30, 1997, White telephoned Detective Laravie and met with him at Detective Laravie's office. Detective Laravie took a photograph of White and incorporated it into a photographic array, which he showed to Good on July 3, 1997. Good showed no hesitation or uncertainty in identifying White as the individual who had posed as Mercer. Detective Laravie also obtained several handwriting exemplars from White and sent them to the Miami Valley Regional Crime Laboratory for analysis.
Tami Good testified that, on January 21, 1997, she had been working as a sales representative at Loan Zone and had received a telephone call from a person representing himself to be Bradley Mercer. In applying for a loan over the telephone, the imposter provided his name, address, social security number, date of birth, place and years of employment, telephone numbers, income, and banking information. When Good later called the imposter's home telephone number, she spoke with the imposter, and he verified the telephone numbers. Good thought that the voice on the telephone that time resembled the voice of the individual who had applied for the loan. After the loan had been approved, the imposter appeared at Loan Zone on January 24, 1997 for closing on the loan. Good explained that, during the closing, she had sat in a small, well lit room with the imposter uninterruptedly for ten to fifteen minutes, during which time the imposter had presented a state identification card, which had a picture of him, and had reviewed and signed the loan documents. Good gave the imposter a $2,500 check made out to Bradley Mercer from National City Bank. Good testified that payment had never made on the loan and that the loan had been "charged off as a bad debt."
Good identified White as the individual who had come into the office to close the loan while representing himself to be Mercer. She stated that, in July 1997, she had viewed the photographic array prepared by Detective Laravie and had written her signature next to the photograph of White, indicating that he was the imposter.
White made a Crim.R. 29(A) motion for judgment of acquittal at the close of the state's case. The trial court denied the motion, and White proceeded to testify on his own behalf. White testified that he had never been to Loan Zone, that he had not signed the loan application forms, and that he had not obtained a loan on January 27, 1997 in the name of Mercer.
The jury found White guilty of forgery and theft. On November 10, 1998, White filed a Crim.R. 29(C) motion for judgment of acquittal, which the trial court overruled on November 16, 1998. On December 1, 1998, the trial court sentenced White to community control sanctions for a period not to exceed five years and ordered him to pay restitution in the amount of $2,500. White filed a notice of appeal on December 4, 1998, and he raises two assignments of error.
 I. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
White contends that his trial counsel rendered ineffective assistance by failing to subpoena several witnesses to testify at trial and by failing to present an alibi defense.
To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that such conduct prejudiced the defense. Strickland v. Washington (1984),466 U.S. 668, 687-688. Trial counsel is presumed to have rendered adequate assistance and to have exercised reasonable professional judgment. Id. at 689-690. Prejudice is shown by evidence that "but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.
White argues that his trial counsel acted unprofessionally in failing to subpoena Yolanda Bailey from the Trotwood BMV, where the state identification card had been issued in Mercer's name, Dana Bresson from Nations Credit, where another loan had been obtained in Mercer's name, Kelly Crickmore from Check X-Change, where the Loan Zone check had been cashed, and someone from the Miami Valley Regional Crime Laboratory, where his handwriting exemplars had been sent for analysis. Because White's claims of ineffectiveness cannot be resolved by reviewing the record, they are not appropriate for direct appeal. State v. Booker (1989),63 Ohio App.3d 459, 466. Furthermore, White has failed to demonstrate that he suffered prejudice as a result of his counsel's alleged unprofessional conduct. White submits only that the testimony of Bailey, Bresson, Crickmore, and a crime lab technician was "realistic and potentially exculpatory" evidence. Without explaining how these witnesses would have contributed to his defense, White has failed to show a reasonable probability that, but for counsel's alleged unprofessional conduct, he would have been acquitted of the charges.
White also claims that his trial counsel was ineffective for failing to present an alibi defense. However, without asserting that he had a viable alibi defense to present, White has not shown that his trial counsel's failure to present an alibi defense prejudiced him. See State v. Mallory (July 10, 1998), Montgomery App. No. 16543, unreported. Thus, White has not met his burden of demonstrating that his conviction should be reversed because his trial counsel rendered ineffective assistance.
The first assignment of error is overruled.
 II. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR TO THE PREJUDICE OF THE DEFENDANT BY NOT GRANTING THE MOTION FOR JUDGMENT OF ACQUITTAL BASED UPON THE WEIGHT OF THE EVIDENCE.
White urges that the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal because his conviction was against the manifest weight of the evidence.
Crim.R. 29(C) provides, in pertinent part:
 If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within such further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal.
Crim.R. 29(A) states that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." A judgment of acquittal is inappropriate "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
"`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380,386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Id. at 390 (Cook, J., concurring).
White's claim on appeal is actually that his conviction was against the manifest weight of the evidence. He does not assert that the state failed to prove the elements of the forgery and theft offenses. Rather, he claims that he was not Mercer's imposter.
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. at 387, quoting Black's, supra, at 1594. On appeal, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. We afford substantial deference to the trial court's decisions on witness credibility because "[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported.
In our judgment, the jury did not clearly lose its way in believing the identification testimony of Mercer, Detective Laravie, and Good that White was the individual who had applied for and had received the $2,500 loan from Loan Zone while representing himself to be Mercer. Thus, White's forgery and theft convictions were not against the manifest weight of the evidence.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and KOEHLER, J., concur.
(Hon. Richard N. Koehler sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
Copies mailed to:
Johnna M. Shia
Joe Cloud
Hon. Mary E. Donovan